1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VELASQUEZ,<br>CDCR #D-75915,<br><br>                    Plaintiff,<br><br>vs.<br><br><br><br><br><br>A. BARRIOS, C. GREY,<br>C. ROBERTSON, M. LEVIN,<br>F. PASCUA, R. TORREZ, GONZALES,<br>FLINT, S. THOMS, C. HALL, N.<br>GRANNIS and L.E. SCRIBNER,<br><br>                    Defendants. | CASE NO. 07cv1130-LAB (CAB)<br><br>**ORDER**<br><br>**(1)  ADOPTING WITH MODIFICATION REPORT AND RECOMMENDATION TO GRANT DEFENDANT FLINT'S AMENDED MOTION TO DISMISS;**<br><br>**and**<br><br>**(2)  ADOPTING WITH MODIFICATION  REPORT AND RECOMMENDATION TO GRANT COLLECTIVE DEFENDANTS' MOTION TO DISMISS**<br><br>[Dkt  Nos. 32, 58, 57, 70, 83] |

Plaintiff David Velasquez ("Velasquez") is proceeding *pro se* with a 42 U.S.C. § 1983

civil rights action arising from alleged constitutional violations and negligence by prison

medical and administrative personnel associated with their responses to his needs while

incarcerated in Calipatria State Prison.  The matter is before the court on two Reports and

Recommendations ("R&R") of the Magistrate Judge assigned to this case.  The R&R

addressing the Motion To Dismiss ("Motion") the First Amended Complaint (Dkt No. 9 "FAC")

filed by all but two of the named defendants ("Collective Defendants") recommends the

1   Court grant the Motion, with leave to amend.[1]   Dkt Nos. 32, 58.  The R&R addressing the

2   separate (and unopposed) Amended Motion To Dismiss filed by one of the two other named

3   defendants, Dr. Frank B. Flint, M.D. (who was belatedly served) recommends granting the

4   Amended Motion, with leave to amend. Dkt Nos. 57, 70.  The remaining named defendant,

5   Juan Gonzalez, appears not to have been served.[2]

6        The Court granted Velasquez extensions of time to file Objections to the R&Rs.  Dkt

7   Nos. 61, 66, 78. He filed Objections to the R&R addressing the Collective Defendants

8   Motion, combining a Motion For Leave To Amend.  Dkt No. 69.  The Court accepted his

9   subsequent filing of a Motion To Amend R&R Objections with supplemental medical records

10  evidence.  Dkt Nos. 82, 83.  Velasquez missed the August 15, 2008 extended deadline to

11  file Objections to the R&R addressing Dr. Flint's Motion, but the court received from him on

12  August 18, 2008 a document captioned "Objections To Report And Recommendation" which

13  purports to inform the Court he has "corrected" the error identified in the R&R associated

14  with a state claims procedure, and again asks for leave to amend his complaint and for more

15  time to respond.  The Court separately rejects that belated filing, one of multiple attempted

16  filings the Court has informed Velasquez in prior Orders are not appropriate responses in the

17  procedural posture of this case.

---

18

19   [1]    Although the R&Rs refer to the "Complaint" rather than the FAC, it appears from
     Velasquez's Motion To File Amended Complaint (Dkt No. 7) the only change in the pleading between
20   the original Complaint and the FAC was to correct a misspelling of a defendant's last name.

21   [2]    The R&R alerts Velasquez that the provisions of FED. R. CIV. P. 4 (m) have not been
     satisfied as to Gonzalez and that the deficiency must be corrected or else the unserved defendant
22   is subject to dismissal. The court construes the R&R paragraph headed "Service on Defendant
     Gonzalez" as the required notice to the plaintiff.  R&R 10:7-16.  As the FAC was filed
23   October 16, 2008, and the R&R was filed May 23, 2008, and still no service on Gonzalez is reflected
     in the docket, the court hereby dismisses that defendant without prejudice under that authority.
24   Velasquez, in his R&R Objections, argues defendant Gonzalez was purportedly served or should
     have been served by the Marshal.  Dkt No. 69 pp. 1-2.  However, even if service were effectuated
25   on that defendant, the court finds from the face of the FAC, as a matter of law, Velasquez's
     allegations against him of Eighth Amendment violations fail to state a claim. He alleges Dr. Gonzalez
26   saw him for his hernia, *and recommended surgery* be performed as soon as the Medical Review
     Committee authorized it.  The FAC allegations substantiate Dr. Gonzalez thereafter became
27   unavailable, with defendants advising Velasquez a new doctor would be instructed to schedule a
     surgical evaluation.  No amendment could cure pleading defects against Dr. Gonzalez consistent with
28   the facts pled against him in the FAC. Far from manifesting deliberate indifference to Velasquez's
     hernia condition, he intended to surgically correct the condition and recommended the procedure be
     approved and scheduled.

07cv1130

1   The Court has conducted a *de novo* review of the legal standards and the
2   recommendations to which Velasquez has objected.   For the reasons discussed below, the
3   R&R recommending Dr. Flint's Amended Motion be granted is **ADOPTED**, and the R&R
4   recommending the Collective Defendants' Motion be granted is **ADOPTED**, but in both
5   instances the Court **REJECTS** the recommendation Velasquez be granted leave to amend
6   his allegations in a Second Amended Complaint, terminating this action.

7   **I.      BACKGROUND**

8           **A.      Factual Background**

9           Velasquez's October 16, 2007 FAC alleges Eighth and Fourteenth Amendment cruel
10  and unusual punishment and due process violations as well as state law negligence claims
11  arising from the manner in which his medical needs and administrative appeals were
12  addressed by prison officials and medical staff associated with a hernia, hernia surgery, and
13  pain management before and after the surgery.   He names as defendants:  A. Barrios, a
14  medically trained assistant; C. Gray, a supervising registered nurse; C. Robertson, a health
15  care manager; M. Levin, a medical doctor; F. Pascua, a medical appeals examiner; Juan
16  Gonzalez, a surgeon; R. Torrez, a medical appeals analyst; Frank B. Flint, a surgeon; S.
17  Thomas, a doctor; C. Hall, an appeals examiner; N. Grannis, the chief inmate appeals
18  coordinator; and L.E. Scribner, the Calipatria warden, whose responsibilities allegedly
19  include reviewing all administrative appeals filed by inmates.   Velasquez sues all the
20  defendants in their individual and official capacities. FAC ¶¶ 4-15.

21          Velasquez alleges he first submitted a sick call slip seeking an examination for pain
22  in his stomach in June 2005.  FAC ¶17.  He saw Dr. Gonzalez in July 2005.  Dr. Gonzalez
23  diagnosed the cause as a protruding hernia and recommended Velasquez's request for
24  surgery be approved by the Medical Authorization Review Committee.  FAC ¶¶ 18-19.
25  Velasquez alleges he waited ten and one-half months for the committee to act.  During that
26  interval, on April 27, 2006, he was injured during an "assault" by prison officials unrelated
27  to his FAC complaints, an incident he contends worsened his untreated hernia condition and
28  associated pain.  FAC ¶¶ 32-34.  He submitted a third request for curative treatment on

May 10, 2006.  FAC ¶¶ 20-22.  That appeal was received and processed on May 12, 2006, with assignment to A. Barrios.  Barrios initially entered in his report Velasquez was approved for the surgery, and the procedure was awaiting scheduling by the surgeon's office.  He modified the report to explain Dr. Gonzalez was no longer available at the facility, but Velasquez would be scheduled for an appointment with the doctor's replacement. Defendants Levin and Pascua "upheld" the Barrios appeal response.[3]  FAC ¶¶ 23-31.

Velasquez alleges he resubmitted his administrative appeal on July 21, 2006, reiterating his request for immediate surgery.  FAC ¶ 36.  On August 7, 2006, he spoke with defendant Thomas, "yard medical staff," about his pain and the fact he had been waiting almost a year for hernia repair surgery.  He acknowledges he had been receiving medication for his pain during the interim, but told Thomas it was no longer effective because the hernia had worsened, and he asked for stronger medication.  Thomas told him discourteously to be happy with the medication he was given.  FAC ¶¶ 37-42.  Velasquez alleges that response prompted him to file another administrative appeal, alleging misconduct, denial of medical care, and malpractice, because Thomas had been aware of Velasquez' pain since at least June 2006 when she examined him after he was taken to the infirmary to receive treatment for abdominal pain and had herself prescribed the pain medication Velasquez was given.  FAC ¶¶ 43-51.

On August 22, 2006, defendants Gray and Robertson partially granted Velasquez's appeal.  They stated: on April 19, 2006, the general surgeon had requested hernia repair be approved; the medical authorization review committee had authorized the procedure on May 9, 2006; the general surgeon who was scheduled to perform the procedure was unavailable for several months, but was now available for scheduling; and Velasquez "is high on the chronological list of patients to have surgery performed and will be scheduled in the near future," with the expectation "the procedure will be scheduled within the next 30 days." FAC ¶¶ 52-56.  Velasquez was "dissatisfied" with that result because he had already waited

---

[3]  To the extent Velasquez may intend to suggest something improper in the report modification, the two notations are not mutually exclusive and appear from the balance of the FAC allegations to both be true.

1   13 months, during which time the hernia had swelled to softball size, limiting his mobility and

2   causing him extreme pain, back spasms, and weight gain.   FAC ¶ 57-58.   On

3   August 24, 2006, he submitted another appeal to the "highest appeal level available" seeking

4   immediate curative surgery, not "near future" surgery.   FAC ¶ 59.   Velasquez was finally

5   admitted to the hospital for the operation on October 12, 2006, but only after he had

6   contacted "Jon Wolff, supervising deputy Attorney General" and the prison law office on

7   September 21, 2006.  Dr. Flint performed the surgery on October 13, 2006.  FAC ¶¶ 60-63.

8        On October 17, 2006, Velasquez was discharged to the prison yard "in spite of his

9   weakened condition."  He had a follow-up appointment with Dr. Flint the next day.   At that

10  time, he complained of continued muscle weakness, weight gain, back spasms, and

11  limitations on his day-to-day activities.  Dr. Flint told him he should be alright once his body

12  healed from the surgery.  FAC ¶¶ 65-68.  On November 7, 2006, defendants Hall and Torres

13  denied his (unspecified) appeal.[4]   FAC ¶ 69.  He  thereafter submitted "repeated sick call

14  request[s]," asking for sufficient pain medication and physical therapy "for the physical

15  injuries sustained during his 16 month bout with a protruding hernia."   FAC ¶ 70.   He

16  contends he continues to have back spasms, cannot shed the weight he gained, has not

17  regained muscle strength, and is still in pain.  FAC ¶ 74.  He alleges "on information and

18  belief" if he is not promptly provided with physical therapy, "he risks permanent disability and

19  an indeterminate term of pain."  FAC ¶ 75.

20        Based on the foregoing factual allegations, Velasquez alleges causes of action for

21  deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth

22  Amendments, violations of his Due Process rights, and violations of California negligence

23  law. FAC ¶¶ 76-79.  He seeks a judgment declaring:  defendants Barrios, Gray, Robertson,

24  Levin, Pascua, and Hall violated his Due Process rights under the Fourteenth Amendment

25  in the conduct of the medical appeal process, and Grannis and Scribner did so by sustaining

26  the medical appeal results; defendants Gonzalez, Flint, Thomas,  Pascua, Levin, Robertson,

27

28        [4]   If Velasquez is referring to the "highest level" appeal he filed on August 24, 2006 to
demand the surgery, it had been mooted by his October surgery.

Gray, and Barrios violated his Eighth Amendment rights by failing and continuing to fail to provide medical care or "to take action to curb and/or remedy [his] pain and suffering;" defendants Thomas and Flint violated his Eighth Amendment rights by failing to prescribe adequate medication to relieve his pain and suffering, and Levin by sustaining their decisions; and all defendants violated the Eighth Amendment through unreasonable delay in scheduling and performing his hernia surgery.  FAC p. 18.  He also seeks injunctive relief in the form of an Order that he be immediately examined by a qualified physician,[5] that physical therapy or other follow-up treatment be arranged, and that he be prescribed medication to alleviate his pain.  Finally, he seeks an award of monetary damages:  in the amount of $100,000 "jointly and severally" against defendants Flint, Thomas, and Gonzalez; $10,000 "jointly and severally" against defendants Barrios, Gray, Robertson, Levin, Pascua, Torres, Hall, Grannis, and Scribner; and punitive damages in the amount of $20,000 each against defendants Gonzales, Flint, and Thomas, in the amount of $10,000 each against defendants Torrez, Hall, Scribner, and Grannis, and in the amount of $30,000 each against defendants Barrios, Gray, Robertson, Levin, and Pascua.  FAC pp. 19-20.

### B. Procedural Background

Velasquez presented for filing multiple motions while the Motions To Dismiss were under submission and around the time and after the two R&Rs were entered on May 23, 2008 and June 30, 2008.  These attempted filings included:  repeated requests for appointment of counsel; extensions of time to file Objections to the R&Rs; A "Motion To Amend" his objections to the first R&R, accompanied by supplemental medical records to augment his Objections to the R&R addressing the Collective Defendants' Motion; a Motion To Amend his California Tort Claims Act claim, accompanied by a new federal Complaint and a new state claim form, both of which he asked this Court to address simultaneously; and a Motion For Leave To File "And To Amend As To Doc. No. 32 and Doc. No. 57," also captioned "Objections To Report And Recommendation."

---

[5]   However, a prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution. *See* Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986).

1   The Court accepted via Discrepancy Order Velasquez's supplemental medical records

2   evidence, **GRANTS** the Motion to augment his Objections with that evidence, and has

3   considered those materials in ruling on the R&Rs.[6]   Dkt No. 83.   The Court rejected via

4   Discrepancy Order the new California Tort Claims Act Form attached to a proposed new

5   federal Complaint (presented as a Motion to Amend Complaint As To California Tort Claim)

6   because they appear to be an attempt to raise a new claim.   Velasquez must present any

7   such claim to the appropriate state agency to obtain an administrative result there.   Dkt No.

8   80.   This Court is without jurisdiction to decide such claims in the first instance.   The

9   additional attachment to that material, purporting to be a new Complaint, was rejected for

10   filing as premature, and his associated request to consolidate the tort claim process with

11   federal adjudication of his civil rights causes of proposes an improper procedure.   Finally,

12   the Court also rejected via Discrepancy Order the ambiguous purported "Objections To

13   Report And Recommendation" document because, despite that caption language, the

14   pleading makes no reference to the first R&R, precedes in time the filing of the second (Dr.

15   Flint Motion) R&R, references the docket numbers of only the Motions To Dismiss, not his

16   Objections or the R&R, and because the document is in fact, as stated in its first sentence,

17   an "Amended Complaint," not Objections to an R&R.   Dkt No. 81.

18   The Collective Defendants' Motion was filed December 28, 2007.   Dkt No. 32.   The

19   R&R deciding the Collective Defendants' Motion was filed May 23, 2008.   Dkt No. 58.

20   Velasquez filed Objections to that R&R on June 19, 2008, combined with a Motion For Leave

21   To Amend, reasserting his need for appointed counsel.   Dkt No. 69; *see also* Dkt No. 75.

22   His Objections to the recommended disposition of that Motion are comprised solely of

23   contentions he can "prove all his claims if given the opportunity to move forward."   Dkt No.

24   69 p. 1.   He relies on his proposed "Motion To Amend" in support of that argument, a filing

25   the Court rejected for the reasons discussed above.   Any new tort claim he believes he can

26   pursue must proceed in the normal course through the state's administrative system before

27

28   _____

[6]   "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."   United States v. Howell, 231 F.3d 615, 622 (9th Cir. 2000).

1   it is ripe for adjudication here, assuming he can establish a constitutional violation associated

2   with the tort, irrespective of any alleged "relationship" to the FAC in this action.  The only

3   substantive legal argument he advances in his Objections purports to rely on <u>Estelle v.</u>

4   <u>Gamble</u>, 429 U.S. 97, 104 (1976) and the federal Constitution for the proposition:  "a

5   deliberate indifference claim may be stated when prison officials ignore[] the directives of the

6   inmate's physician" because "government has obligation to provide medical care for those

7   whom it is punishing by incarceration."[7] Dkt No. 69 pp. 1-2. Respondent filed no Reply.

8          Dr. Frank B. Flint's Motion was filed April 30, 2008 (Dkt No. 55), superseded by

9   Corrected/Amended Motion filed May 1, 2008 ("Amended Motion" Dkt No. 57). Velasquez

10  filed no Opposition.  The R&R deciding Dr. Flint's Motion was filed June 30, 2008.  Dkt

11  No. 70.  The deadline to file Objections to that R&R passed on July 31, 2008, with none filed.

12  Velasquez subsequently requested an extension of time to file Objections to that R&R, which

13  the Court granted on August 5, 2008, extending his deadline to August 15, 2008. He missed

14  the August 15, 2008 extended deadline, but attempted a belated filing of a document

15  captioned "Objections To Report And Recommendation" which purports to inform the Court

16  he has "corrected" the error identified in the R&R associated with a state claims procedure,

17  and again asks for leave to amend his complaint and for more time to respond. The result

18  of any pending state administrative claim can only form the subject matter of a future cause

19  of action not yet ripe for federal adjudication.

20  **II.     DISCUSSION**

21          **A.     <u>Legal Standards</u>**

22                  **1.     <u>Motions To Dismiss</u>**

23          A FED. R. CIV. P. ("Rule") 12(b)(6) motion to dismiss tests the legal sufficiency of the

24  complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a)(2) requires only

25  _____

26          [7]   Velasquez also attaches to his Objections a copy of a newspaper article he represents
    appeared on September 20, 2007 in an unspecified publication captioned:  "Report: Poor medical
    care kills inmates." Dkt No. 69.  He highlights the last paragraph of the article which states, in its
27  entirety:  "Another inmate's death from a hernia was blamed on a five-week delay in getting him
    special treatment, the report said."  Even acknowledging the recent notoriety of medical care in the
28  state prison system, generalized reports and idiosyncratic examples of other inmate patient's
    conditions and results are irrelevant to the fact-specific civil rights claims of this particular plaintiff.

1   "a short and plain statement of the claim showing that the pleader is entitled to relief," in

2   order to "give the defendant fair notice of what the . . . claim is and the grounds upon which

3   it rests." Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1964 (May 21, 2007),

4   *quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957).   "While a complaint attacked by a Rule

5   12(b)(6) motion to dismiss does not need detailed factual allegations," those allegations

6   must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

7   "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted

8   to proceed. Id. 127 S.Ct. at 1966 (citation omitted), *abrogating the formulation in* Conley,

9   355 U.S. at 45-46. Rule 12(b)(6) dismissal does not require appearance, beyond a doubt,

10  that plaintiff can prove *no* set of facts in support of a claim that would entitle the plaintiff to

11  relief.[8]  "[W]hen the allegations in a complaint, however true, could not raise a claim of

12  entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum

13  expenditure of time and money by the parties and the court.' " Id. (citations omitted).

14          Thus, a complaint may be dismissed when it presents a cognizable legal theory, but

15  fails to plead essential facts under that theory. Robertson v. Dean Witter Reynolds, Inc.,749

16  F.2d 530, 534 (9th Cir. 1984); *see* Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

17  Cir. 1988).  Dismissal is also warranted when the complaint lacks a cognizable legal theory.

18  Robertson,749 F.2d at 534; *see* Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule

19  12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").  In

20  determining whether the complaint states a claim, the court assumes the truth of all factual

21  allegations and must construe them in the light most favorable to the nonmoving party,

22  including all reasonable inferences to be drawn from those facts. Cahill v. Liberty Mut. Ins.

23  Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Cedars-Sinai Medical Center v. National League

24  of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007).  However, legal conclusions need

25  not be taken as true merely because they are cast in the form of factual allegations.

26  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); *see* Transphase

27  ───────────────────

28          [8]   "It is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged
    or that the defendants have violated the [laws] in ways that have not been alleged." Bell Atlantic, 127
    S.Ct. at  1969 n.8 (citation omitted).

Systems, Inc. v. Southern California Edison Co., 839 F.Supp. 711, 718 (C.D. Cal. 1993) (the court does not "need to accept as true conclusory allegations . . . or unreasonable inference") (citation omitted); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  When a Rule 12(b)(6) motion is granted, leave to amend is ordinarily denied only when it is clear the deficiencies of the complaint cannot be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Cahill, 80 F.3d at 339 (denial of leave to amend upheld as granting leave would have been futile).

In examining a claim's sufficiency, as opposed to its substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).  However, a court conducting Rule 12(b)(6) review "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006), citing Warren, 328 F.3d at 1141 n. 5. "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).' " Id., quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003).

## 2. District Court's Review Of Magistrate Judge's R&R

A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes.  Rule 72(b); see 28 U.S.C. § 636(b)(1).  An objecting party may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections."  Rule 72(b).

In reviewing an R&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a de novo determination of the factual findings to which

1    there are objections).  "If neither party contests the magistrate's proposed findings of fact,

2    the court may assume their correctness and decide the motion on the applicable law."

3    Orand v. United States, 602 F.2d 207, 208 (9th Cir. 1979).  The court reviews de novo the

4    magistrate judge's conclusions of law.  Gates v. Gomez, 60 F.3d 525, 530 (9th Cir. 1995);

5    Robbins v. Carey, 481 F.3d 1143, 1147 (9th Cir. 2007) ("determinations of law by the

6    magistrate judge are reviewed de novo by both the district court and [the court of appeals]").

7                    **3.      Prisoner Civil Rights Actions Under 42 U.S.C. § 1983**

8           To prevail on a civil rights claim, a plaintiff must prove both that (1) a person acting

9    under color of state law committed the conduct at issue, and (2) the conduct deprived the

10   plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the

11   United States.  42 U.S.C. §1983; Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988);

12   Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).

13                   42 U.S.C. § 1983 creates a cause of action against a person
                     who, acting under color of state law, deprives another of rights
14                   guaranteed under the Constitution. Section 1983 does not create
                     any substantive rights; rather it is the vehicle whereby plaintiffs
15                   can challenge actions by governmental officials. To prove a case
                     under section 1983, the plaintiff must demonstrate that (1) the
16                   action occurred "under color of state law" and (2) the action
                     resulted in the deprivation of a constitutional right or federal
17                   statutory right.

18   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted); Graham v. Connor,

19   490 U.S. 386, 393-94 (1989) (Section 1983 " is not itself a source of substantive rights, but

20   merely provides a method for vindicating federal rights elsewhere conferred") (citation

21   omitted).

22          Prison officials and staff acted under color of state law in the handling of Velasquez's

23   medical complaints, satisfying the first element for the statement of a Section 1983 claim.

24   He must also plead a cognizable constitutional violation.  He challenges the manner in which

25   defendants addressed his medical needs and processed his complaints through the

26   institution's appeals process as violations of the Eighth Amendment and the Due Process

27   Clause of the Fourteenth Amendment.  Only if he has stated a colorable claim for cruel and

28   unusual punishment or due process violations, or it appears from the facts alleged he could

restate the claims in a manner potentially entitling him to relief, can he avoid termination of this action.  The Court liberally construes the pleadings presented by a *pro se* civil rights plaintiff, affording the plaintiff the benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621,623 (9th Cir. 1988).  However, "a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

## B.    Eighth Amendment Pleading Standards

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 103, *quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976).  This principle "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." Id.; West v. Atkins, 487 U.S. 42, 54-55 (1988) ("indifference . . . manifested by prison doctors in their response to the prisoner's needs . . . states a cause of action under § 1983").  Penal institutions have conditions of confinement obligations to "furnish[] sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Nevertheless, "[a]fter incarceration, only the ' unnecessary and wanton infliction of pain '. . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   Whitely v. Albers, 475 U.S. 312, 319 (1986)  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all **must involve more than ordinary lack of due care** for the prisoners' interest or safety." Id. (emphasis added) (citations omitted).  The Constitution "does not mandate comfortable prisons, . . . and only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298, *quoting* Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981).

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs. Estelle, 429 U.S. at 106; Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). To prevail on such a claim, the prisoner must satisfy both an objective element and a subjective

1  element.  Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); Hallett v.

2  Morgan, 296 F.3d 732, 744 (9th Cir. 2002).  The prisoner must first demonstrate the

3  existence of an objectively serious medical condition of which the prison officials were or

4  should have been aware.  Estelle, 429 U.S. at 104-05; McGuckin v. Smith, 974 F.2d 1050,

5  1059-60 (9th Cir 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104

6  F.2d 1133 (9th Cir. 1997).  A "serious" medical need exists if the failure to treat a prisoner's

7  condition could result in further significant injury or the "unnecessary and wanton infliction

8  of pain."  Estelle, 429 U.S. at 104.  Examples of indications a prisoner has a "'serious' need

9  for medical treatment" include: the "existence of an injury that a reasonable doctor or patient

10  would find important and worthy of comment or treatment; the presence of a medical

11  condition that significantly affects an individual's daily activities; or the existence of chronic

12  and substantial pain. . . ."  McGuckin, 974 F.2d at 1059-60; Lopez v. Smith, 203 F.3d 1122,

13  1131-32 (9th Cir. 2000).  The court finds the protruding hernia condition Velasquez describes

14  a sufficiently serious medical need adequate, for Rule 12(b)(6) purposes, to satisfy the

15  objective component of an Eighth Amendment claim.

16       Once the prisoner's medical needs are identified and the defendant's response to

17  those needs have been established, the court can determine whether an adequate showing

18  of "deliberate indifference" can be made.  The court must be able to find a "purposeful act

19  or failure to act on the part of the defendant."  Estelle, 429 U.S. at 105.

20       Prison officials are deliberately indifferent to a prisoner's serious
        medical needs when they " 'deny, delay, or intentionally interfere
21       with medical treatment.' "  Hamilton v. Endell, 981 F.2d 1062,
        1066 (9th Cir.1992) (quoting Hunt v. Dental Dep't, 865 F.2d 198,
22       201 (9th Cir.1989)).  However, the officials' conduct must
        constitute " 'unnecessary and wanton infliction of pain' " before
23       it violates the Eighth Amendment.  Estelle, 429 U.S. at 104 [. . .]
        (quoting Gregg v. Georgia, 428 U.S. 153, 173 [. . .]; see also
24       Frost, 152 F.3d at 1128.

25  Hallett, 296 F.3d at 744-45.

26       "Deliberate indifference" exists when a prison official "knows of and disregards an

27  excessive risk to inmate health and safety; the official must be **both aware of facts** from

28  which the inference could be drawn that a **substantial risk of serious harm** exists, **and he**

1    ***must also draw the inference***." <u>Farmer</u>, 511 U.S. at 837 (emphasis added).  "Deliberate"

2    indifference  involves  more  than  mere  unconcern,  negligence,  or  even  malpractice.

3    <u>Hutchinson</u>, 383 F.2d at 394 ("mere negligence in diagnosing or treating a medical condition,

4    without more, does not violate a prisoner's Eighth Amendment rights"); <u>Estelle</u>, 429 U.S. at

5    106 ("[m]edical malpractice does not become a constitutional violation merely because the

6    victim is a prisoner").  Inadequate treatment from malpractice, or even gross negligence,

7    does not violate the Constitution.[9]  <u>Estelle</u>, 429 U.S. at 106, 104; <u>Gregg</u>, 428 U.S. at173.

8         "Obduracy and wantonness, not inadvertence or error in good faith" characterize the

9    actionable  state  of  mind.   <u>Wilson</u>,  501  U.S.  at  299.  Proof of this state of mind does not

10   require a demonstration of express intent to cause harm on the part of the official,  by either

11   action or inaction, but the official must have been conscious of a substantial risk to the

12   plaintiff, and yet have acted or failed to act upon that risk in a way that brought serious harm

13   to the plaintiff.  <u>Farmer</u>, 114 S.Ct. at 1980-81.  Prison officials are deliberately indifferent to

14   a prisoner's serious medical needs when they "deny, delay or intentionally interfere with

15   medical treatment." <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). "[D]elay

16   in providing a prisoner with [medical] treatment, standing alone, does not constitute an eighth

17   amendment violation." <u>Hunt</u>, 865 F.2d at 200, *citing* <u>Shapley v. Nevada Bd. of State Prison

18   Comm'rs</u>, 766 F.2d 404, 407 (9th 1985).  "[T]he more serious the medical needs of the

19   prisoner, and the more unwarranted the defendant's actions in light of those needs, the more

20   likely  it  is  that  a  plaintiff  has  established 'deliberate indifference'  on the part of the

21   defendant." <u>McGuckin</u>, 974 F.2d  at 1061, 1059; *see* <u>Hallatt</u>, 296 F.3d at 746 (the Eighth

22   Amendment is violated if "delays occurred to patients with problems so severe that delays

23   would cause significant harm ***and*** that Defendants should have known this to be the case")

24   (emphasis added); *see also* <u>Shapley</u>, 766 F.2d at 407 (a delay in medical treatment must

25   lead to further injury to support a claim for deliberate indifference).

26

27    ⁹  "Medical malpractice does not become a constitutional violation merely because the victim
     is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions
28   sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such
     indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."
     <u>Estelle</u>, 429 U.S. at 106.

1    Differences in judgment between an inmate and prison medical personnel regarding
2    appropriate medical diagnosis and treatment are not enough to state a deliberate
3    indifference claim.  *See* Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  "[N]ot every
4    breach of [the duty to provide medical care] is of constitutional proportions." Hutchinson, 838
5    F.2d at 394.  Minimum requirements to establish deliberate indifference are first, some
6    purposeful act or failure to act by the defendant.  Second, if the claim is delay of treatment,
7    deliberate medical indifference requires a showing the denial was harmful.  Shapley, 766
8    F.2d at 407.  "[W]hen, as here, a claim alleges 'mere delay of surgery,' a prisoner can make
9    'no claim for deliberate medical indifference unless the denial was harmful.'" McGuckin, 974
10    F.2d at 1060 (citation omitted).

11    ## C.    Defendant Flint's Amended Motion To Dismiss

12    Velasquez filed no Opposition to defendant Flint's Amended Motion To Dismiss the
13    FAC.  Dkt No. 57.  The Court may construe a party's failure to oppose a motion as "a
14    consent to the granting of a motion or other request for ruling by the court."  Civ. L. R.
15    7.1(f)(3)(c).  No party filed pertinent Objections to the R&R recommending the Motion be
16    dismissed.  The Court has reviewed *de novo* the legal standards applied by the Magistrate
17    Judge in deciding the Rule 12(b)(6) Motion and her legal conclusions and finds under the
18    applicable law dismissal is appropriate.

19    However, the Court rejects the R&R recommendation Velasquez be permitted to
20    amend the FAC to attempt to restate a claim upon which relief can be granted as to Dr. Flint,
21    the surgeon who performed Velasquez' hernia surgery.  The FAC alleges Dr. Flint saw
22    Velasquez only in connection with the actual surgery and at one follow-up examination
23    shortly after he was released from the hospital, when he expressed his medical opinion
24    Velasquez would feel better after he recovered from the surgery.  Although Velasquez
25    attributes his continuing symptoms to the long delay in obtaining surgical relief, and an
26    exacerbating injury during an unrelated altercation with prison personnel in April 2006, he
27    does not allege Dr. Flint contributed to the delay, nor do his allegations permit any inference
28    Dr. Flint acted with the requisitely culpable state of mind to sustain an Eighth Amendment

1   claim against him.   Velasquez acknowledges he was prescribed and received pain

2   medication throughout the relevant time period.  This Court finds under no construction of

3   the alleged circumstances does Velasquez's pleading cross the minimal "threshold of

4   plausibility" necessary to state an  Eighth Amendment claim against Dr. Flint.  Bell Atlantic,

5   127 S.Ct. at 1966.  From the face of the FAC, Dr. Flint did not "fail to provide medical . . .

6   care," nor can his alleged conduct support any reasonable inference he was deliberately

7   indifferent to Velasquez's medical needs.  *See* Rhoades, 452 U.S. at 342-43.  Although

8   leave to amend is liberally granted, particularly to *pro se* civil rights plaintiffs, such leave is

9   not appropriate when, as here, it is clear the deficiencies of the complaint cannot be cured

10  by amendment consistent with the FAC factual allegations.  DeSoto, 957 F.2d at 658; *cf.*

11  Lopez, 203 F.3d at 1131.  Leave to amend is accordingly **DENIED** as to defendant Flint, and

12  he is **DISMISSED** from this action with prejudice.

13          **D.**       **Collective Defendants'  Motion To Dismiss**

14                   **1.**       **Supervisory Defendants**

15          Velasquez alleges "on information and belief, when a prisoner files a grievance, the

16  grievance staff calls the matter to the attention of their superior(s)," and Grannis and

17  Scribner are those superiors.  FAC ¶¶ 71-72.  The FAC contends they should be held liable

18  for the alleged constitutional violations of their subordinates.  He offers nothing but

19  speculative suggestions either of them may have had any personal involvement associated

20  with the processing of his various administrative appeals to hasten his hernia surgery.

21          There is no *respondeat superior*  or vicarious liability cognizable in 42 U.S.C. § 1983

22  actions.  Monell v. Dept' of Soc. Serv. of the City of New York, 436 U.S. 658 (1978); Jones

23  v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  A supervisor cannot be held personally liable

24  by virtue of his or her position.  Rather, liability can only be predicated on actual knowledge

25  a constitutional violation was occurring and failure to act to prevent the harm, actual

26  participation, or directing subordinates to cause the violation.  Taylor v. List, 880 F.2d 1040,

27  1045 (9th  Cir. 1989).  Vague and conclusory allegations of official participation in civil rights

28  violations are insufficient to survive Rule 12(b)(6) dismissal.  Ivey, 673 F.2d 268.

Velasquez fails to state a claim against Grannis or Scribner.  His manner of pleading makes clear he has no factual basis to substantiate either the warden or the chief inmate appeals coordinator had any personal involvement in his administrative appeals in any manner required to state a claim under Taylor.  Moreover, as discussed below, the Court finds Velasquez fails to state an Eighth Amendment violation associated with his medical needs against any of the named defendants.  Absent an underlying constitutional violation, no 42 U.S.C. § 1983 claim can be stated.  In addition, the Due Process discussion below with respect to the other administrative appeals process defendants, as well as the essential state of mind element with respect to the medical personnel defendants, apply equally to the grounds for dismissal of the supervisory defendants for failure to state a claim upon which relief can be granted.  The Court **ADOPTS** the R&R recommendation these defendants be dismissed, but **MODIFIES** the R&R dismissal recommendation to eliminate leave to amend. The Court finds leave to amend the FAC to permit Velasquez to attempt to state an Eighth Amendment or Due Process violation against these defendants would be futile.

### 2.    Administrative Appeals Process Defendants

Velasquez alleges Due Process violations against the defendants who processed his appeals:  Pascua, a medical appeals examiner; Torrez, a medical appeals analyst; Hall, an appeals examiner;  and Grannis, the chief inmate appeals coordinator.  These defendants are prison administrators not directly entrusted with inmates' medical care.   Prison administrators who "played [no] role in denying [the prisoner] medical care . . . cannot be held vicariously liable for the fault of [medical] personnel at [the prison]," even if the medical personnel themselves may be liable.  Hunt, 865 F.2d at 200.  The R&R traces Velasquez's allegations as to each of these defendants.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The Clause encompasses both substantive and procedural due process. United States v. Salerno, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment).  Substantive due process "prevents the government from engaging

in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty . . . ." Id. (internal quotation marks and citations omitted). Procedural due process requires the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner." Id. (citation omitted).

The requirements of procedural due process apply only to deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). To adequately plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon that deprivation were constitutionally insufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1990). In addition to liberty interests that arise directly from the Constitution, courts have long recognized state prison regulations may give rise to liberty interests that are protected by the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 223-227 (1976); Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Nonetheless, the interest created by the regulation must be something more than freedom from the restrictions ordinarily contemplated by a prison sentence. Sandin v. Conner, 515 U.S. 472 (1995).

Velasquez submitted numerous administrative appeals. To state a cognizable constitutional claim, he must do more than express his dissatisfaction with the results he received. An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action. Moreover, where Eighth Amendment violations are alleged based on medical services access, the liability of prison officials requires their interference in a prisoner's ability to make medical needs known to the medical staff in order to satisfy the deliberate indifference element. Hoptowit, 682 F.2d at 1253, citing Estelle, 429 U.S. at 104. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of *and disregards* an *excessive* risk to inmate health or safety." Farmer, 511 U.S. at 837.

Velasquez's pleading substantiates each of his multiple administrative appeals was processed to a result, albeit results he characterizes as not reflecting sufficient urgency in

1    ensuring on-demand repair of his hernia.   He does not allege the appeal reviewers rejected

2    any medical recommendation with deliberate indifference to his discomfort or with the intent

3    to prolong his suffering.  His pleading substantiates these administrators impeded in no way

4    Velasquez's ability to make his medical needs known to medical staff, as would be required

5    to satisfy the "deliberate indifference" element of his claim.  *See* Hoptowit, 682 F.2d at 1253.

6    His allegations reflect the opposite of impediments:  he made his medical needs known

7    repeatedly to medical staff; he received action on all his requests from both medical staff and

8    through the institution's appears process; the appeals administrators acknowledged his

9    serious medical need; they credited and approved the recommendation for hernia repair

10    surgery from his initial examining doctor; the surgical delay was explained to be the result

11    of physician availability; and the administrators recommended he receive priority scheduling

12    when the surgeon availability issue was resolved.

13        From the facts alleged, this Court must conclude Velasquez was "provided with a

14    system of ready access to adequate [medical] care," and availed himself of it.  Hunt, 865

15    F.2d at 200.  His medical record exhibits and his pleading substantiate he was fully able "to

16    make [his] medical problems known to medical staff" without impediment from the prison

17    administrator defendants, and he received pain medication during the period of delay before

18    the operation and thereafter.  Id., *quoting* Hoptowit, 682 F.2d at 1253.  He fails to allege any

19    state of mind on the part of any of these administrators approaching the requisite deliberate

20    indifference or wanton infliction of pain standard.   Prison officials who "ignore[] the

21    instructions of a prisoner's treating physician" may manifest deliberate indifference.

22    Wakefield v. Thompson, 177 F.3d 1160,1165 (9th Cir. 1999); Estelle, 429 U.S. at 105.

23    However, the allegations in this case substantiate none of the administrative defendants

24    ignored the instructions of Velasquez's treating physician(s).  As discussed below, the FAC

25    allegations and his medical records reflect he was seen frequently by medical personnel

26    throughout the relevant time period.

27        In addition, an isolated instance of conduct, absent egregious circumstances not

28    remotely suggested here, cannot support an Eighth Amendment claim.   For example,

1   Torrez's November 7, 2006 denial of Velasquez's appeal, after the hernia surgery he
2   demanded had already been performed, can by no stretch of the imagination be construed
3   as an adequate basis to permit the case to go forward on Eighth Amendment or Due
4   Process violation theories.   Similarly, Velasquez's attempts to elevate the conduct of Hall
5   and Pascua in declining to decide his appeals in the manner he requested fall well short of
6   pleading the necessary state of mind to warrant survival of his constitutional claims.  Taking
7   the FAC facts pled as true, Velasquez raises no inference of any deliberately indifferent state
8   of mind.  Accordingly, the Court **ADOPTS** the recommendation the administrative appeal
9   defendants be dismissed from this action, but **MODIFIES** the recommendation to eliminate
10  leave to amend the pleading as to them, leaving only the Motion To Dismiss contentions of
11  the medical personnel.

12                    **3.   Medical Personnel Defendants**

13          "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness
14  or injury state a cause of action under § 1983."  Estelle, 429 U.S. at 105.   "This is true
15  whether the indifference is manifested by prison doctors in their response to the prisoner's
16  needs, or by prison guards in intentionally denying or delaying access to medical care or
17  intentionally interfering with the treatment once prescribed."  Id. at 104-05 (footnotes
18  omitted).  The court focuses on the seriousness of the prisoner's medical needs and the
19  nature of the defendants' response to those needs.  See McGuckin, 974 F.2d at 1059.
20  "Mere negligence in diagnosing or treating a medical condition, without more, does not
21  violate a prisoner's Eighth Amendment rights."  Hutchinson, 838 F.2d at 394.

22          The Court accepts as true Velasquez's allegations he experienced considerable
23  discomfort associated with his hernia, and the discomfort and side effects worsened during
24  the months he waited for his surgery to be scheduled and performed.  The Court assumes
25  a protruding hernia is a serious medical condition, as substantiated by Dr. Gonzalez's
26  diagnosis and recommendation as well as the review committees' approval of that
27  recommendation.  His pleading accordingly satisfies the objective element required to state
28  an Eighth Amendment claim.

1    Velasquez attempts to allege deliberate indifference on the part of the prison medical
2    personnel he has served:   Barrios, a medical trained assistant; Gray, a supervising
3    registered nurse; Robertson, a health care manager; Levin, a medical doctor; Flint, a
4    surgeon; and Thomas, a doctor.  However, his allegations and medical records substantiate
5    each saw him when he requested it.  He was provided with medication during the delay
6    between Dr. Gonzalez's July 2005 recommendation his hernia condition be approved for
7    surgical repair and the actual surgery.  His surgery was approved in May 2006, but was
8    delayed, as explained in the August 2006 result of one of his multiple administrative appeals,
9    due to scheduling availability of a surgeon, but with the notation Velasquez would be placed
10   high on the priority list.  His surgery was performed that October.  He requested and received
11   pain medication during the period of delay and after the surgery.

12        The statement of his claims amounts to a difference of opinion regarding appropriate
13   medication or additional therapies he wanted during that time and post-surgery.  His pleading
14   and medical records establish his complaints were far from ignored.   Responses to his
15   needs reflected in the record defeat the potential for a finding of deliberate indifference  to
16   his medical needs. The exercise of professional judgment by prison doctors in their
17   responses to a prisoner's needs does not support a 42 U.S.C. § 1983 cause of action as
18   "unnecessary and wanton infliction of pain" actionable as an Eighth Amendment violation.
19   Estelle, 429 U.S. at 104-05.  Moreover, even "medical malpractice does not constitute cruel
20   and unusual punishment."   Hallett, 296 F.3d at 744, citing Estelle, 429 U.S. at 106.
21   Differences in judgment between an inmate and prison medical personnel regarding
22   diagnoses and appropriate treatment cannot sustain a deliberate indifference claim.
23   Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);  Franklin v. Oregon, 662 F.2d 1337, 1344
24   (9th Cir. 1981).  Similarly, a delay in treatment does not constitute a violation of the Eighth
25   Amendment, unless the delay or denial was harmful.  See McGuckin, 974 F.2d at 1060;
26   Shapley, 766 F.2d at 407; Hunt, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental
27   treatment, standing alone, does not constitute an Eighth Amendment violation").  While the
28   harm caused by delay need not necessarily be "substantial" (McGuckin, 974 F.2d at 1060

07cv1130

& n.2; *see also* <u>Wood v. Housewright</u>, 900 F.2d 1332, 1336, 1339-40 (9th Cir. 1990) (Reinhardt, J., dissenting)), the Eighth Amendment is violated if "delays occurred to patients with problems **so severe** that delays would cause **significant** harm *and* that Defendants should have known this to be the case" (<u>Hallett</u>, 287 F.3d at 1206 (emphasis added)).  The FAC permits no inference the hernia surgery involved any complication arising from delay or resulted in any other kind of serious harm attributable to the scheduling delay.

In consideration of his treatment records, It does not appear to this Court Velasquez has pled a viable Eighth Amendment claim, or could replead one to correct the deficient state of mind element necessary to state the claim against these defendants.  That material consists of eighteen (18) discrete Health Care Services Request Forms he submitted requesting to be seen by medical staff, spanning the dates April 3, 2005 (attachment page 13) through June 5, 2007 (attachment page 7).  Each describes his particular complaint *and each reflects a "triage registered nurse" or doctor reviewed the request for health care services and made notes regarding his complaint and a treatment recommendation*.

In particular, eliminating those medical complaints that appear unrelated to his FAC claims,[10] the Supplemental Records reflect his requests, addressed by medical personnel, were for pain in his stomach[11] or sides or back, or for explicitly hernia-related concerns, or for pain medication (sometimes combined with other requests, such as a diet tray or an extra blanket (*see* 4/12/07 Supplemental Record p. 6)).  In 2005, the requests are dated April 3,[12]

---

[10]    These include such complaints as:  dry skin on fingertips, feet, and scalp (2/5/07, Supplemental Record  p. 3); fever, faintness, sore throat, cough, trouble sleeping, runny nose (4/3/05, Supplemental Record p. 13); and constipation, requesting a "stronger dose" of medication because his stomach hurts (11/25/06 Supplemental Record p. 18).

[11]    However, his stomach complaints appear to be associated with his complaints of constipation, not as a result of the hernia or of the hernia surgery aftermath.  *See e.g.* 9/2/06 Supplemental Record p. 16:  "I still need my metamucil cause now my stomach hurts even more cause it's hard to use the bathroom now. . . ."  He does state, however, in his May 28, 2007 request: "Actually, my stomach <u>never</u> stopped hurting afer my surgery, but I can't seem to get the correct meds. . . ."  Supplemental Record p. 7.

[12]    It appears from notations in his April 3, 2005 Health Care Services Request forms he had had "recent surgery" of some kind.  Supplemental Record p. 13.  His Request dated July 14, 2005 states:  "I have a hernia from the operation I had 9 months ago," and he requested "follow-up" from that prior surgery.  Supplemental Record p. 4. The Court surmises the hernia at issue in this litigation

1    July 14, July 18, August 12, September 4, September 28, October 15, November 28.  In
2    2006, he submitted such requests on May 18, August 12, September 2, September 27,  and
3    October 26.  In 2007, he submitted requests on  March 30, April 12, and May 28.  The most
4    recent document provided in the Supplemental Records is the May 28, 2007 request, where
5    at page 7, he added the observation:  "I can't seem to get the correct meds.  I just live with
6    it I guess???"  The record thus shows a pattern of his repeated requests to be seen by CDC
7    medical personnel for a variety of reasons, both before and after his hernia surgery, each
8    request was acknowledged, usually with notations he was seen and evaluated in response
9    to his request, and he received medication for his complaints.   The treatment records
10   convince the Court leave to amend the FAC to attempt to remedy the Eighth Amendment
11   pleading deficiencies would be futile.

12        As to his additional allegations regarding Dr. Thomas, Velasquez characterizes her
13   attitude on the three occasions he interacted with her as "discourteous."  As traced in the
14   R&R, he complains she manifested insufficient concern for his stomach complaints.  He
15   acknowledges she provided him with medication, defeating any claim she ignored or failed
16   to respond to his needs and foreclosing a claim she wantonly sought to cause him pain or
17   otherwise acted with the requisitely culpable state of mind to raise any constitutional
18   concern.  Differences of opinion over treatment "between a prisoner-patient and prison
19   medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin, 662
20   F.2d at 1344 (citation omitted).  The purported "discourtesy" Velasquez describes in Dr.
21   Thomas' attitude towards him is wholly insufficient to state a cognizable constitutional claim.
22   See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) ("verbal harassment or abuse . . .
23   is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); see also
24   Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended 135 F.3d 1318 (9th Cir. 1998)
25   (disrespectful and assaultive comments by prison guard not enough to implicate the Eighth
26   Amendment).

27   _____

28   is the same hernia he alludes to having resulted from other surgery he appears to have previously
     received in late 2004. He asserts no claims associated with that prior medical treatment, and such
     intervention reinforces his access to and utilization of prison medical resources.

Accepting all Velasquez's allegations as true, they fall short of stating a claim that could satisfy the pleading standard required to warrant allowing the case to proceed on an Eighth Amendment theory against the medical personnel defendants. The essential element of a culpable state of mind is lacking in his statement of that theory against any of them. The Court **ADOPTS** the R&R recommendation for dismissal, but **REJECTS** the recommendation leave to amend be granted. *See* Bell Atlantic, 127 S.Ct. at 1964-65; Robertson, 749 F.2d at 534; Balistreri, 901 F.2d at 699.

### 4. State Law Negligence

There remain no federal causes of action as a result of the Court's adoption of the R&Rs recommending both Rule 12(b)(6) Motions be dismissed for failure to state a claim upon which relief can be granted. The Court declines to exercise supplemental jurisdiction over the state law negligence claims. That result seems particularly appropriate because, as discussed above, Velasquez attempted to file a new federal Complaint, while these Motions were pending and after the R&R had been filed with respect to the Collective Defendants' Motion To Dismiss, which included what appeared to be an attempted new administrative claim under the California Tort Claims Act solely cognizable by the appropriate California agency in the first instance.

### D. Leave To Amend Not Warranted

The Court concurs with the magistrate judge's conclusion Velasquez fails to state any cognizable constitutional claim against the named defendants. Applying the principle that leave to amend should be freely given, the R&R recommends the Rule 12(b)(6) Motions be granted "without prejudice and with leave to amend." R&R 10:20-21. However, "[i]t is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the [laws] in ways that have not been alleged." Bell Atlantic, 127 S.Ct. at 1969, n.8 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" to survive the attack, those allegations "must be enough to raise a right to relief above the speculative level." Id. at 1964-65 (citations omitted).

1       In this case, Velasquez *has* provided "detailed factual allegations" and, in the opinion

2   of this Court, has pled himself out of federal court.  The conduct alleged cannot plausibly be

3   construed as rising to the level of any constitutional violation.  He received medical attention

4   or other appropriate response to each medical request he submitted, including a doctor's

5   recommendation hernia surgery be approved.  The surgery was authorized through the

6   institution's medial procedures approval committee.  He received the procedure, after a delay

7   occasioned in material part by the unavailability of a surgeon.  He received pain medication

8   at all times relevant to this action.  His multiple administrative appeals to attempt to force the

9   medical personnel to give him different medications and otherwise to take his stomach and

10  other pains more seriously were addressed through the institution's administrative channels

11  to resolution, albeit not with the results or the timing Velasquez wanted, affording him all

12  process he was due. When deficiencies cannot be cured by additional allegations consistent

13  with those in the challenged pleading, as the Court finds to be the case here, leave to amend

14  is not warranted.

15  **III.**   **CONCLUSION AND ORDER**

16      For all the forgoing reasons, **IT IS HEREBY ORDERED:**

17      1.   This Court **ADOPTS** the R&R insofar as it recommends the claims against Flint

18  be dismissed, but **REJECTS** that portion of the R&R recommending the dismissal be without

19  prejudice and with leave to amend. Dkt No. 70, 5:7-10. Defendant Flint's Motion To Dismiss

20  is **GRANTED**, and plaintiff's federal constitutional claims against him are **DISMISSED** with

21  prejudice and without leave to amend.  Defendant Flint's alternative Motion For More Definite

22  Statement is **DENIED AS MOOT**.

23      2.   The Court **ADOPTS** the R&R insofar as it recommends the claims against the

24  Collective Defendants be dismissed, but **REJECTS** that portion of the R&R recommending

25  the dismissal be without prejudice and with leave to amend.  Dkt No. 58, 10:20-21. The

26  Collective Defendants' Motion To Dismiss is **GRANTED**, and plaintiff's federal constitutional

27  claims against them are **DISMISSED** with prejudice and without leave to amend.

28  \\

1    3.    Plaintiffs' state law negligence claim is **DISMISSED** without prejudice in

2 consideration of the dismissal of all the federal claims, disposing of all claims and all parties

3 in this action.

4    4.    The Clerk of Court shall terminate this case in its entirety.

5    **IT IS SO ORDERED**.

6 DATED:  August 29, 2008

7

8    **HONORABLE LARRY ALAN BURNS**
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv1130